J-A01014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: D.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.C.,JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2499 EDA 2024 |

Appeal from the Decree Entered August 27, 2024
In the Court of Common Pleas of Northampton County Orphans' Court at
No(s):  A2024-0006

| | | |
|---|---|---|
| IN RE: E.A.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.C.,JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2500 EDA 2024 |

Appeal from the Decree Entered August 27, 2024
In the Court of Common Pleas of Northampton County Orphans' Court at
No(s):  A2024-0007

BEFORE:  DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED MARCH 4, 2025**

Appellant, A.C., Jr. ("Father"), appeals from the August 27, 2024 orders entered in the Northampton Court of Common Pleas that terminated his parental rights to 2-year-old E.A.C. and 1-year-old D.C. (collectively, "Children").[1]  Upon careful review, we affirm.

---

[1] We consolidated these appeals *sua sponte*.

**A.**

We glean the relevant factual and procedural history from the trial court's Statement of Reasons.[2] Father and R.J.K. ("Mother") are biological parents to Children.[3] They were never married and never consistently lived together.[4]

**E.A.C.**

The Northampton County Department of Human Services, Children Youth and Families Division ("the Agency") has been involved with the family since E.A.C.'s birth in June of 2022, when E.A.C. tested positive for cocaine, amphetamines, and fentanyl.[5] After the Agency removed E.A.C. from Mother and Father due to Mother's substance abuse and Father's lack of cooperation with the Agency, the court adjudicated him dependent on June 30, 2022, and placed him with father's sister ("Paternal Aunt"). Father visited E.A.C. regularly while he was in the hospital following his birth, but neither parent attended the adjudication hearing to contest the allegations of dependency.

_____

[2] On September 17, 2024, the trial court filed a Pa.R.A.P. 1925(a) Statement directing this Court to its August 27, 2024 Statement of Reasons.

[3] Mother is not a party to this appeal.

[4] Father is not listed on either child's birth certificate and he has not filed an acknowledgement of paternity, but he acknowledged paternity at the hearing. N.T. Hr'g 4/22/24, at 4.

[5] The Agency was already involved with Mother and her older children, E.A.C.'s half siblings, who are not a part of this appeal.

The court subsequently ordered Father to comply with, *inter alia*, random urine screens, mental health treatment, and parenting education services. Additionally, the court ordered Father to have supervised visits with E.A.C. From May 2023 to August 2023, Father only attended 4 out of 16 possible visits with E.A.C. Father also appeared for visits with E.A.C. while under the influence of either drugs or alcohol and failed to provide necessary supplies for E.A.C., even though the agency notified him of what was required.

Father also "failed to actively engage in most of his services, with the only completed service being . . . a drug and alcohol evaluation that recommended no treatment." Statement of Reasons-Findings of Fact, 8/27/24, at ¶16. He has also missed "numerous" court-ordered random drug screens, until he incurred new criminal charges that required him to submit to drug testing. *Id.* at ¶17. E.A.C. remains in the care of Paternal Aunt.

**D.C.**

In July of 2023, Mother gave birth to D.C. in the backyard of Father's residence while Father was not present. Following his birth, D.C. was admitted to the NICU at Lehigh Valley Hospital-Cedar Crest, where he remained for approximately 5 weeks due to "extreme withdrawal symptoms requiring intensive medical attention." *Id.* at ¶20. While in the hospital, D.C. had tested positive for amphetamines, fentanyl, and MDMA, and a cord blood test tested positive for tramadol.

On July 27, 2023, the court granted the Agency's Petition for Emergency Protective Custody of D.C., and, following a hearing, entered a Shelter Care

Order on July 28, 2023. Father attended the hearing, and the court advised him of his requirements for reunification under the Permanency Plan/Interim Order. The court placed D.C. with a foster family.

Father visited D.C. in the hospital on several occasions, but he appeared under the influence of either drugs or alcohol at least once. Father also met with Agency representatives soon after D.C.'s birth and indicated that "he was confused as to why this was happening again with D.C., as he had purportedly completed all necessary services." *Id.* at ¶25. The Agency gave Father "a highlighted copy of the Court's order outlining what he still needed to undergo." *Id.*

From May 4, 2023, through December 1, 2023, Father submitted to only 1 of 56 random drug screens, and tested positive for fentanyl. From December 1, 2023, through April 12, 2024, he submitted to 25 of 40 scheduled screens, 19 of which were positive for either Suboxone or benzodiazepines. He did not present a prescription for either drug. Father also has two prior drug-related convictions from 2014 and 2018.

In addition, the in-home provider, Homestead, discharged Father from the program because he failed to engage with his caseworker. Finally, Father has never paid child support for either child.

On February 20, 2024, the Agency filed its petition to terminate Father's parental rights to Children.[6] The court appointed Henry Newton, Esq. to serve in the dual role of legal counsel for Children and guardian *ad litem* ("GAL").[7]

The parties proceeded to a termination hearing on April 22, 2024. At the hearing, the Agency presented testimony from Betsy Genther, a visiting nurse advocate employed at St. Luke's Hospital, and Megan Serrano and Janel Fortun, caseworkers for the Agency. The Agency's witnesses testified in accordance with the above facts.

Ms. Fortun also testified that the Agency does not consider Father's housing stable, as he "has faced the possibility of foreclosure multiple times," including at present, and there "have been numerous instances where the utilities were cut off for failure to pay." Trial Ct. Op. at ¶ 47 (citing N.T. Hr'g, 4/22/24, at 107). She explained that, when the Agency visited Father's home, there were no supplies for Children, such as car seats, bedding, cribs, toys, clothing, bottles, or formula. Finally, she testified that E.A.C. has established a strong bond with Paternal Aunt and her husband, that D.C. has bonded with

---

[6] Father had met with the Agency in January 2024 where he was given a protective parenting evaluation to fill out. Father completed the evaluation on March 30, 2024, after the agency had filed the termination petition.

[7] There was no conflict in Attorney Newton's dual role as counsel and GAL because the children's ages prevented them from stating a preferred outcome. *See In re T.S.*, 192 A.3d 1080, 1092-93 (Pa. 2018) (If a child is "too young to be able to express a preference as to the outcome of the proceedings," there is no conflict between legal and best interests.).

his foster family, Children's respective foster families meet all their needs, and that neither child has a bond with Mother or Father.

Father testified that he was starting a part-time job doing electrical work but did not provide proof. He also explained that he has family members who can care for Children while he works. He testified that he and Mother owned a construction business together, but there was no testimony or other evidence presented to establish that the business could support himself and Children.

Father also explained that he missed his drug screenings because his ongoing criminal case only required him to submit to one random screening per week. Father further admitted that he struggles with addiction, had not complied with any of the treatment recommendations following his 2014 and 2018 drug-related convictions, and currently has a pending drug-related case.

Finally, the GAL testified that he believes it is in Children's best interest to terminate Mother and Father's parental rights so that they may be adopted into loving, stable homes.

The court found that "Father was supposedly unaware as to why he was part of this litigation, even though he had prior discussions with the Agency, as he blamed Mother for not complying and claimed she discarded any correspondence from the Agency without his knowledge[,]" and concluded that he "accepts little responsibility for his role in these matters."[8] *Id.* at ¶

_____

[8] The court noted that, throughout the life of the case, Mother has also failed to comply with her reunification requirements. Trial Ct. Op. at ¶ 27.

- 6 -

44. On August 27, 2024, the trial court terminated Father's parental rights to E.A.C. pursuant to pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8), and (b), and to D.C. pursuant to Sections 2511(a)(1), (2), (5), (6), and (b).

**B.**

Father timely appealed. Both he and the trial court complied with Pa.R.A.P. 1925.

Father raises the following issues for our review:

A. Termination of Father['s] [p]arental [r]ights were in error pursuant to 23 Pa.C.S. [(a)]( 2) and ( b) in that the trial court failed to find [F]ather had evidenced a settled intent to relinquishing his parental rights to [Children] and further finding Father failed to perform his parental duties without adequate explanation for his actions.

B. Termination of Father's [p]arental [r]ights was in error in that the trial court failed to find that for a period of at least six (6) months [Children] had been removed from Father, and that the conditions which led to the removal continue to exist and cannot or will not be remedied within a reasonable period of time, and that such termination served [Children's] best interest.

Father's Br. at 4-5 (unpaginated).

**C.**

In cases involving the involuntary termination of parental rights, our review is limited to determining whether the trial court's conclusion is supported by competent evidence. *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021). When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports

them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. *T.S.M.*, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." *Id.* Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004)(citation omitted).

It is axiomatic that "[p]arents enjoy a fundamental right to make decisions regarding the care, custody and control of their children. It cannot be denied that significant and permanent consequences for both the parent and child can follow the termination of parental rights, as there is an undeniable importance in a child's relationship with a biological parent." *L.A.K.*, 265 A.3d at 591 (internal citations omitted). Accordingly, "[i]n recognition of the gravity attendant to the termination of parental rights, the moving party must establish the statutory grounds by clear and convincing evidence; that is, evidence that is so clear, direct, weighty and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of

the truth of the precise facts in issue." *Id.* at 592 (citations and quotation marks omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. *In re Adoption of A.C.*, 162 A.3d 1123, 1128 (Pa. Super. 2017). "[I]nitially, the focus is on the conduct of the parent." *Id.* (citation omitted). As discussed above, "[t]he party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* (citation omitted). If the court determines that the parent's conduct warrants termination of his parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *Id.* (citation omitted). Notably, we need only agree with the court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination of parental rights. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008). With regards to Father, we concentrate our analysis on Section 2511(a)(2).

Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by

the parent." 23 Pa.C.S. § 2511(a)(2); ***In re Adoption of S.P.***, 47 A.3d 817, 827 (Pa. 2012). The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; those grounds may also include "acts of refusal as well as incapacity to perform parental duties." ***In re N.A.M.***, 33 A.3d 95, 100 (Pa. Super. 2011). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." ***In re C.M.K.***, 203 A.3d 258, 262 (Pa. Super. 2019). Notably, a "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." ***In re Z.P.***, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citation omitted).

Finally, sincere efforts to perform parental duties may still be insufficient to remedy an incapacity. ***Id.*** at 1117. This is because subsection (a)(2) "emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being[,]" especially "where disruption of the family has already occurred and there is no reasonable prospect for reuniting it." ***Id.*** (citation omitted).

*

In his first issue, Father argues that the court abused its discretion in terminating his parental rights because he was "substantially compliant" with the Agency's directives but was "unaware of the majority of the mandates" due to lack of proper notice from the Agency. Father's Br. at 13-14 (unpaginated). He also asserts that he was "significantly disadvantaged by"

- 10 -

Mother's drug use during her pregnancy and her failure to notify Father of communications from the Agency. *Id.* He submits that he has made progress and that he will fully comply with the Agency's requirements once he is "fully aware. . .of what is required of him, and maintains his sobriety[.]" *Id.* at 14.

The court determined that termination of Father's parental rights was warranted under Section 2511 (a)(2) due to his "willful refusal to engage in the court-ordered services in order to be reunified." Statement of Reasons-Conclusions of Law at ¶ 11. Specifically, it found that

> Father has shown a continued inability, or want, to assume full parental duties for either E.A.C. or D.C. since birth. Father has continually failed to comply with court-ordered services and the [c]ourt finds his testimony regarding a lack of notice as to what he needed to do to be incredible. The Agency sufficiently notified Father, on numerous occasions, of what was expected of him. The [c]ourt also finds that Father's testimony concerning his purported ability to care for the Children and his explanations for his prior inability to parent lacks credibility.

*Id.* at ¶¶16-17.

Our review of the record supports the trial court's findings. Although Father asks us to consider the evidence in the light most favorable to him and conclude that he substantially complied with the Agency's requirements, the Agency presented evidence that Father lacks stable housing that is suitable for Children, failed to comply with drug testing, failed to maintain sobriety, and has not engaged in visits and other services. Furthermore, the court did not credit Father's testimony that he did not receive notifications from the Agency concerning reunification requirements. We decline to reweigh the evidence or usurp the trial court's credibility determinations. Accordingly, we

- 11 -

discern no abuse of discretion in the trial court's decision to terminate Father's parental rights pursuant to Section 2511(a)(2).

*

With respect to Section 2511(b), our analysis focuses on whether there is a parental bond and how terminating that bond will affect the child. We review "whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). It is well settled that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005).

"One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child with close attention paid to the effect on the child of permanently severing any such bond." *In re Adoption of N.N.H.*, 197 A.3d 777, 783 (Pa Super. 2018) (citation omitted). The fact that a child has a bond with a parent does not preclude the termination of parental rights. *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014). Rather, the court must examine the depth of the bond to determine whether the bond is so meaningful to the child that its termination would destroy an existing, necessary, and beneficial relationship. *Id.* at 898. Moreover, the court may consider intangibles, such as the love, comfort, security, and stability the child might have with the adoptive resource. *In re*

***N.A.M.***, 33 A.3d at 103.[9]  Ultimately, the concern is the needs and welfare of the child.  ***Z.P.***, 994 A.2d at 1121.

Father argues that "this is not a case where he was unwilling or unable to satisfy the irreducible minimum requirements of parenthood."  Father's Br. at 17 (internal quotation marks and citation omitted).  He concedes that he does not have a bond with Children but maintains that his attempts to comply with the Agency directives outweigh the court's determination that termination was in Children's best interests.  ***Id.***

The court found that the evidence shows that both Children have bonded with their caregivers, who "provide food, shelter, safety, and stability while providing for each child's physical, emotional, educational, and developmental needs."  Trial Ct. Op. at ¶ 15.

Upon review, the trial court did not abuse its discretion when it found that the Agency presented clear and convincing evidence to terminate Father's parental rights pursuant to Section 2511(b).  Ms. Fortun testified that Children are doing very well in their respective foster homes and that Children view their respective foster parents as their parents.  N.T. Hr'g at 104-05.  Furthermore, the GAL testified that, in his opinion, termination and adoption were in Children's best interest.  ***Id.*** at 119.  As the record supports the trial

---

[9] A foster family may be a resource family.  ***See*** 23 Pa.C.S. § 6303 (A resource family is defined as a "family which provides temporary foster or kinship care for children who need out-of-home placement and may eventually provide permanency for those children, including an adoptive family.").

court's findings that termination of Father's parental rights is in Children's best interest, we discern no abuse of discretion.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/4/2025